## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

JUSTIN MICHAEL FENNEY,

               Petitioner,

v.

TRACY BELTZ,

               Respondent.

Civil No. 21-1679 (JRT/HB)

**MEMORANDUM OPINION AND ORDER
DISMISSING PETITION FOR WRIT OF
HABEAS CORPUS**

---

Zachary A. Longsdorf, **LONGSDORF LAW FIRM, PLC**, 5854 Blackshire Path, Suite 3, Inner Grove Heights, MN 55076, for petitioner.

Jeffrey Wald, **RAMSEY COUNTY ATTORNEY'S OFFICE**, 345 Wabasha St. N, Saint Paul, MN 55102; and Matthew Frank, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for respondent.

Justin Michael Fenney filed a Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254, alleging he is in custody in violation of the laws of the United States. (Pet. Writ Habeas Corpus ("Pet."), July 21, 2021, Docket No. 1.) Specifically, Fenney alleges the Minnesota state courts made an unreasonable determination of fact when he was denied relief based upon allegedly newly discovered evidence Fenney claims demonstrates a prosecution witness in his trial provided false testimony. (Pet. at 5); *see also* 28 U.S.C. § 2254(d)(2). Respondent moved to dismiss Fenney's Petition on three procedural grounds and on the merits. (Mot. Dismiss, Aug. 23, 2021, Docket No. 6; Mem. Supp. Mot. Dismiss, Aug. 23, 2021, Docket No. 7.)

The Magistrate Judge issued a Report and Recommendation ("R&R")[1] recommending that, although Fenney's petition was not an unauthorized "second or successive" petition, it should be denied because it is untimely and because Fenney did not present a claim for relief arising under federal law to the state courts.  (R&R at 8–20, Nov. 19, 2021, Docket No. 14.)  Fenney timely objected to the R&R.  (Obj. R&R, Dec. 3, 2021, Docket No. 15.)

Because Fenney had actual knowledge of the factual predicate for his claim by May 2018, his petition is untimely.  Therefore, the Court will overrule the objection and adopt the recommendation of the R&R.  The Court, however, will limit its holding just to this finding.

**BACKGROUND**

Petitioner Justin Michael Fenney was convicted after a bench trial in Minnesota state court on one count of first-degree criminal sexual conduct.  *See State v. Fenney* ("*Fenney I*"), No. A13-0978, 2015 WL 1880185 (Minn. Ct. App. Apr. 27, 2015); *Fenney v. State* ("*Fenney II*"), No. A19-2053, 2020 WL 5361660 (Minn. Ct. App. Sept. 8, 2020).  The Minnesota Court of Appeals partially summarized the trial court's findings of fact:

> Fenney and L.H. had been in a tumultuous 11-year relationship and have one child in common.  On October 25, 2012, L.H. drank alcohol throughout the day and into the

---

[1] The R&R was issued by then-Magistrate Judge Katharine Menendez before her confirmation as a District Court Judge.  After Judge Menendez's confirmation, the case was assigned to Magistrate Judge Hildy Bowbeer, but Magistrate Judge Bowbeer was not involved in the R&R at issue here.

evening and was engaged in a sexual act with another man on her living-room couch when Fenney walked into her apartment around 10:00 p.m. Fenney was furious. L.H. ran into her bedroom, where their nine-year-old daughter was sleeping, and closed the door. As Fenney kicked the bedroom door open, the other man ran from the apartment. Fenney proceeded to beat L.H., repeatedly hitting and kicking her. Although L.H.'s alcohol consumption limited her recall, she remembered the angry look on Fenney's face as he choked her and her pleas to stop as she lay on the bathroom floor with her nose bleeding profusely into the toilet. She also remembered being on the floor between the bathroom and living room with her hands behind her back and feeling a pain in her "bottom." She passed out, and when she woke up, her "bottom" hurt. She did not know whether or not Fenney had anally penetrated her with an object.

When the police arrived, they found a toilet brush with a bloody handle in the bathroom. The blood covered five and one-half inches of the handle. Officers also discovered fecal matter on the bathroom floor just inside the threshold of the door. A paramedic observed that L.H.'s nose was deformed and that she had a swollen and bloodied face. She also had blood running down her leg. L.H. indicated to the paramedic that the back of her groin area hurt. The paramedic asked L.H. if Fenney had assaulted her with the toilet-brush handle, and L.H. indicated "yes" by nodding. Later, the Minnesota Bureau of Criminal Apprehension (BCA) conducted DNA testing of the blood on the toilet-brush handle and concluded that DNA from the blood matched L.H.'s DNA.

*Fenney I*, 2015 WL 1880185, at *1.

After she was transported to the hospital, L.H. underwent surgery to repair lacerations and perforations to her rectal wall. *Id.* The doctor discovered a one-inch external injury, a four-inch internal tear, and a one-inch internal perforation breaching the rectal wall. *Id.* The doctor who performed surgery on L.H. opined that her injuries

-3-

were consistent with penetration by a toilet-brush handle. *Id.* When the police asked L.H. if she believed she was sexually assaulted with the toilet brush, she stated "I know I was." *Id.* at *2. During trial, however, L.H. testified that she did not know whether Fenney anally penetrated her. *Id.*

When police questioned Fenney, they informed him that L.H.'s "private areas" were injured without mentioning any anal injuries or otherwise referencing her buttocks or anus, and asked Fenney how these injuries may have happened. *Id.* Fenney responded that he did not do anything to her "bottom." *Id.*

In addition to this evidence, D.W., the man who was with L.H. and fled after Fenney's arrival, also testified at the trial. *Fenney II*, 2020 WL 5361660, at *1. D.W. testified that when he left the apartment (1) L.H. was physically unhurt; (2) L.H. had not complained about any physical injury; (3) there was no blood on any floors or walls; (4) there was no fecal matter on the bathroom floor; and (5) there was no bloody toilet brush handle on the bathroom floor. *Id.*

After sentencing, L.H. provided a statement that differed somewhat from her trial testimony. *Fenney I*, 2015 WL 1880185, at *2. At trial, L.H. testified that the pain in her rectum occurred "simultaneously with a kick when she was 'part way in the living room [and] part way in the bathroom' and her 'hands were behind [her] back.'" *Id.* (alterations in original). After sentencing, L.H. stated that Fenney had "flung" her to the bathroom wall and that, when she hit the wall, she "felt something sho[o]t up [her] back." *Id*.

Fenney sought postconviction relief based on L.H.'s new testimony.  The district court and court of appeals denied the motion concluding that physical and medical evidence and Fenney's statement that he did not do anything to L.H.'s "bottom" although he had not been told of any rectal injuries provided sufficient basis to establish Fenney's guilt.  *Id.* at *4–5.  The district court asserted that it did not rely heavily on L.H.'s testimony, and the postconviction courts concluded that even if L.H. had not testified, it would have "change[d] very little about the overall evidence."  *Id.* at *6–7.

In May 2018, Fenney received a letter from D.W.  (Pet. at 6.)  According to Fenney, D.W. stated in the letter that he "felt his testimony did not fully explain everything that had happened between he and LH.  Specifically, [D.W.] stated that he and LH had engaged in consensual anal intercourse immediately prior to Mr. Fenney arriving."  (*Id.*)  Fenney had an investigator meet with D.W.  (*Id.*)  The investigator obtained an affidavit dated March 25, 2019 from D.W. confirming the contents of the May 2018 letter.  (*Id.*)

On August 6, 2019, Fenney filed a new motion for postconviction relief in Minnesota district court asserting that he should receive a new trial based on newly discovered evidence that D.W. had provided false and incomplete testimony at trial and that this evidence demonstrated Fenney's innocence.  (*Id.* at 4–5; 1st Resp. to Order to File Document at 3, Nov. 5, 2021, Docket No. 11.)  Fenney argued that the evidence in D.W.'s letter and affidavit provided an alternative explanation for L.H.'s rectal injuries and

that had the trial court known of this fact it would have reached a different result.  (2nd Resp. to Order to File Document at 11–14, Nov. 5, 2021, Docket No. 12.)

The state district court denied Fenney's postconviction petition without an evidentiary hearing because "the 'significant weight' of the evidence of Fenney's guilt was unaffected by the additional disclosure in D.W.'s affidavit" and D.W.'s evidence probably would not have produced an acquittal or more favorable result.  *Fenney II*, 2020 WL 5361660, at *2–3.  The Minnesota Court of Appeals affirmed.  *Id.* at *4.  The Minnesota Supreme Court declined further review on November 17, 2020, and judgment was entered on December 10, 2020.  (Pet. at 5.)

On July 21, 2021, Fenney filed this petition.  Respondent moved to dismiss the petition on four grounds: (1) the petition was a "second or successive" petition for which Finney did not obtain authorization to file; (2) the petition was untimely because he filed it more than one year after discovering the factual predicate for the claim; (3) Finney failed to properly exhaust the claim in state court because he failed to fairly present it as a federal claim in state court; and (4) the claim lacks merit.  The Magistrate Judge issued an R&R recommending that the writ of habeas corpus be denied on three procedural grounds: (1) the petition was untimely because Fenney learned of the factual predicate in May 2018 from D.W.'s letter and yet did not seek state postconviction relief until August 2019 by which time the one-year federal habeas limitation period had already expired; (2) even if Fenney did not discover the factual predicate until receiving D.W.'s

-6-

March 2019 affidavit, the petition was still untimely because Fenney's state court proceedings ended when the Minnesota Supreme Court denied review on November 17, 2020 not when judgment was entered on December 10, 2020; and (3) it is unclear whether Fenney is seeking relief pursuant to federal law but even if he is, he did not properly present and therefore exhaust this federal claim in the Minnesota courts as required. (R&R at 14–20.) The R&R further found that Fenney had not demonstrated actual innocence to overcome the procedural obstacles. (*Id.* at 14–15.) Fenney timely objected to the R&R. (Obj. R&R.) Respondent indicated that it will not respond to the Fenney's objection beyond referring the Court to its previous arguments supporting its motion to dismiss. (Resp. Obj., Dec. 8, 2021, Docket No. 16.)[2]

---

[2] Respondent also did not file an objection to the Magistrate Judge's conclusion that Fenney's petition was not an unauthorized second or successive petition. (*See* R&R at 8–9; Resp. to Obj., Dec. 8, 2021, Docket No. 16.) Therefore, the Court reviews this recommendation for clear error. *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015); *see also* Fed. R. Civ. P. 72 advisory committee's note to 1983 addition ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Before initiating a "second or successive" habeas petition under 28 U.S.C. § 2254, a petitioner must obtain authorization from the appropriate court of appeals. 28 U.S.C. § 2244(b)(3)(A). Although it is undisputed that this is the second time Fenney has initiated a habeas proceeding for this conviction and he did not obtain authorization from the Eighth Circuit to file this petition, the Magistrate Judge's finding that this was not a "second or successive" petition is not clearly erroneous. As the R&R found, the term "second or successive" is a term of art in habeas cases. *Slack v. McDaniel*, 529 U.S. 473, 486 (2000). "[N]ot every habeas petition that is second in time requires preauthorization." *Williams v. Hobbs*, 658 F.3d 842, 853 (8th Cir. 2011). "A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition." *Slack,* 529 U.S. at 485–86. Fenney's first proceeding was dismissed without prejudice without consideration of the merits because Fenney failed to meet the

## DISCUSSION

### I.     STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R.[3]  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

### II.    ANALYSIS

Fenney objects to the Magistrate Judge's conclusions that (1) the factual predicate date for D.W.'s evidence is May 2018; (2) his state postconviction proceedings ended when the Minnesota Supreme Court denied review, not when judgment was entered; (3)

---

exhaustion requirements.  (*Fenney v. Minnesota*, Case No. 16-1882, R&R at 5–7, Nov. 10, 2016, Docket No. 15; *Fenney v. Minnesota*, Case No. 16-1882, Order, Dec. 20, 2016, Docket No. 16.)

[3] De novo means that this Court will review the evidence and the law independently, meaning the Magistrate Judge's prior opinion has no influence on how the Court reviews the issues.  In essence, the Court will review the case from the start, as if it is the first court to review and weigh in on the issues.

he failed to adequately present his claims to the state courts; and (4) he failed to adequately demonstrate his actual innocence sufficient to excuse these procedural bars. Because the Court can resolve Fenney's petition based on the first and fourth issues, it will only address these two issues.

### A.   Timeliness of Fenney's Habeas Petition

Under 28 U.S.C. § 2244(d)(1), a one-year statute of limitations applies to filing a writ of habeas corpus in federal court challenging confinement as a result of a state conviction. The statute provides four different dates from which to determine the start of the limitations period. 28 U.S.C. § 2244(d)(1). Only one of these is relevant here. The limitations period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(D). The limitations period does not include the time during which the same claim is pending review in state postconviction proceedings. *Id.* § 2244(d)(2).

Fenney filed this claim in federal court based on newly discovered evidence on July 21, 2021. Assuming without deciding that his state court proceedings ended on December 10, 2020 as Fenney argues, 223 days elapsed after his state court proceedings ended and he initiated this proceeding. He initiated his state court proceedings on August 6, 2019, and the time that elapsed while the claim was pending review in state court does not count against the limitations period. Therefore, the issue the Court must decide is whether Fenney could have discovered through the exercise of due diligence the factual

predicate that forms the basis of his petition by March 17, 2019—the remaining 142 days on his one-year statute of limitations.

Fenney asserts that the factual predicate date is March 25, 2019—the date that Fenney obtained D.W.'s affidavit confirming the contents of the letter D.W. sent Fenney in May 2018. Fenney argues that March 25, 2019 is the proper date because it is the day he finally obtained admissible evidence and prior to that date the Minnesota courts would have denied a postconviction challenge based solely on D.W.'s letter. He further argues using March 25, 2019 gives meaning to the phrase "exercise of due diligence" because it allows petitioners in his situation to obtain the necessary evidence to file a potentially viable claim.

The factual predicate date for Fenney's claim is no later than May 31, 2018.[4] The statute does not define the term "factual predicate," but a plain reading of the statute indicates it is solely concerned with the facts underlying the claim, not whether the facts are available in an admissible form or are sufficient to succeed in state or federal court. Specifically, the question § 2244(d)(1)(D) asks is not about the process of gathering

_____

[4] Fenney never specifies exactly what date he received the letter from D.W. indicating only that he received in or around May 2018. The Court makes no findings as to the exact date Fenney received D.W.'s letter or as to the precise factual predicate date. Instead, the Court assumes based on Fenney's representations that he received it on the last day of May 2018. Even if Fenney in fact received it sometime after May 2018, nothing indicates that he received it after March 17, 2019.

Moreover, as the R&R points out, it may be the case that the factual predicate could have been discovered with reasonable diligence much earlier including during the original trial. (R&R at 11 n.1.)

evidence in support of a claim, but just whether the petitioner had discovered or could

have with discovered it with reasonable diligence. *Earl v. Fabian*, 556 F.3d 717, 726 (8th

Cir. 2009) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)).  Nothing in the

statutory text indicates that the term "factual predicate" also includes admissibility or

sufficient reliability to file in state court.  Fenney also does not point to any case law—

binding or persuasive—that reads this into the text.  Indeed, case law supports the Court's

interpretation of § 2244(d)(1)(D).  Several courts, including the Eighth Circuit, have found

that the factual predicate date is not based on the collection of evidence supporting the

facts but rather based on knowledge of the relevant facts.  *Earl*, 556 F.3d at 725–26

("[Petitioner] is confusing his knowledge of the factual predicate of his claim with the

process of gathering evidence in support of that claim." (cleaned up)).[5]

Fenney's claim is predicated on the facts that (1) D.W.'s trial testimony was

incomplete and (2) D.W.'s statement that he and L.H. engaged in anal intercourse.  The

May 2018 letter contained all these facts.  Fenney's investigator and D.W.'s affidavit did

---

[5] *See also In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) ("We have held that [§ 2244(d)(1)(D)] means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." (quotation omitted)); *Daniels v. Uchtman*, 421 F.3d 490, 492 (7th Cir. 2005); *Flanagan v. Johnson*, 154 F.3d 196, 198–99 (5th Cir. 1998) (holding that it is knowledge of the facts and not an affidavit supporting those facts that triggers the factual predicate date); *Brooks v. McKee*, 307 F. Supp. 2d 902, 906 (E.D. Mich. 2004) ("It is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running; the accrual of the statute of limitations does not await the collection of evidence which supports the facts."); *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001) ("Accrual does not await the collection of evidence supporting the facts, including possible supporting affidavits." (emphasis added)).

not turn up any other predicate facts underlying the claim.  The affidavit merely repackaged them.  In other words, in May 2018 Fenney discovered the entire factual predicate of his claim.

Fenney is correct that the factual predicate date does not always accrue "the first instance a petitioner hears that someone might have evidence favorable to his case." (Obj. R&R at 2.)  Fenney is also correct that the exercise of due diligence language is in the statute for a reason so that a petitioner can take steps to gather information "when a petitioner learns there is something that might be beneficial to his case."  (*Id.* at 3.)  But this case does not trigger these two points.  The May 2018 letter did not merely indicate that someone might have favorable evidence.  It provided all the evidence—the entire factual predicate—for the claim.  This is not a case where Fenney received a bare letter offering no facts just asserting that someone might have some favorable evidence.  One of the cases Fenney cites in support of his objection—*Moore v. Knight*, 368 F.3d 936 (7th Cir. 2004)—illustrates the difference between Fenney's case and a case where the factual predicate date might be delayed pending an investigation.

In *Moore*, a friend of the petitioner informed the petitioner that "based on overheard conversations, he believed the jury was improperly led or coerced." *Id.* at 938. The *Moore* petitioner asked the friend to further investigate, and the friend then sent a letter to the petitioner with the results of the investigation and two affidavits from jurors suggesting the trial court judge improperly influenced the jury.  *Id.*  The Seventh Circuit

determined the petitioner discovered the factual predicate when he received the letter and affidavits because prior to that he "did not know any specific information about what had transpired between the Judge and the jurors-he could only speculate as to what may have been said." *Id.* at 939.  In other words, until the petitioner had these materials, he did not have "specific, concrete information . . . upon which he could base his claim." *Id.* The Seventh Circuit did not hold that the admissibility of evidence was relevant, only what factual information the defendant knew.  Here, Fenney had all the specific, concrete information for his claim in the May 2018 letter.  Unlike in *Moore* where the friend's first statement contained no factual predicate and the investigation turned up additional facts, D.W.'s affidavit did not add anything to the facts Fenney knew.

Fenney points to two other cases he claims support his contention that his factual predicate arose in March 2019.  These cases also do not support Fenney.  First, Fenney points to *Starns v. Andrews*, 524 F.3d 612 (5th Cir. 2008).  *Starns* is at its core a case about the exercise of due diligence, not the meaning of factual predicate.  *Id.* at 617–20.  To the extent that *Starns* is relevant, it undercuts Fenney's argument as the Fifth Circuit found a factual predicate is discovered when a petitioner or the petitioner's criminal attorney receives the document with the relevant facts because that is the date the petitioner learns the facts.  *See id.* at 620–21.  So too here: once Fenney received D.W.'s letter, he had discovered the factual predicate.  Second, Fenney points to *Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005).  In *Wilson*, the state argued the petitioner did not exercise due

diligence when the facts underlying his claim received widespread media attention. *Id.* at 660. *Wilson* is irrelevant to Fenney's case. The issue in *Wilson* is again the exercise of due diligence, not when the petitioner learned of something. It was undisputed that the *Wilson* petitioner did not have any relevant facts that put him on notice of his claim.

In sum, at most D.W.'s affidavit only supported or strengthened Fenney's claim as it was just a process of turning the factual predicate into evidence more likely to be admitted; it does not affect when Fenney discovered the factual predicate. *See Earl*, 556 F.3d at 726; *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012). Because Fenney knew the facts necessary for his claim when he read D.W.'s letter in May 2018, he discovered the factual predicate for this claim no later than May 31, 2018. The statute of limitations was triggered on that date. Fenney did not file his state claim that paused the statute of limitations until August 6, 2019, fourteen months after the factual predicate accrued. Based on his state court proceedings and when he filed this Petition, Fenney's factual predicate must have accrued on March 17, 2019 or later for the Petition to be timely. It accrued more than nine months before March 17, 2019.

Accordingly, the Court will overrule this objection to the R&R and find that the claim is untimely.[6]

_____

[6] The § 2244 limitations period is subject to equitable tolling. *Gordon v. Arkansas*, 823 F.3d 1188, 1195 (8th Cir. 2016). "The one-year statute of limitation may be equitably tolled only if the movant shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (cleaned up). The Magistrate Judge found that equitable tolling was not applicable here. (R&R at 14.) Fenney did

**B.      Actual-Innocence Exception to § 2244's Timeliness Requirement**

Although there is a one-year statute of limitations, a petitioner can overcome the

expiration of the statute of limitations and proceed to consideration of the merits of the

petition upon a convincing showing of actual innocence.  *McQuiggen v. Perkins*, 569 U.S.

383, 386 (2013).  A showing of actual innocence is rare and requires a petitioner to prove

"that, in light of the new evidence, no juror, acting reasonably, would have voted to find

him guilty beyond a reasonable doubt."  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329

(1995)); *Rouse v. United States*, 14 F.4th 795, 801 (8th Cir. 2021).  "This is a 'demanding'

standard of proof that will only be successful in 'extraordinary' circumstances."  *Rouse*,

14 F.4th at 801 n.3 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

The R&R concluded that the evidence Fenney offers "falls far short of actual

innocence of the offense for which he was convicted" and therefore did not excuse the

running of the statute of limitations.  (R&R at 14–15.)  Fenney objected to this finding and

seeks to invoke the actual-innocence exception to the statute of limitations.[7]  Fenney

---

not object to this finding, therefore, the Court reviews it for clear error.  *See Montgomery*, 98 F. Supp. 3d at 1017.  Given the long delays and the lack of any evidence that something stood in his way that prevented timely filing, refusing to apply equitable tolling is not clearly erroneous.

[7] As the Magistrate Judge points out, Fenney did not argue the actual-innocence exception should apply in his brief before the Magistrate Judge.  (R&R at 14–15.)  A party cannot, in an objection to an R&R, raise arguments that were not clearly presented to the magistrate judge.  *See Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 1000 (8th Cir. 2004).  "[A] claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review."  *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000).  Therefore, Fenney is arguably barred from raising this exception in the first instance in an objection to the R&R.  The miscarriage of justice exception—including proof of actual innocence—can overcome various procedural defaults.  *McQuiggen*, 569 U.S. at 392–93.  Although Fenney did not raise it in

-15-

argues that D.W.'s testimony that he engaged in consensual anal intercourse with L.H. has the potential to prove Fenney's actual innocence and that the Magistrate Judge's treatment of the evidence requires minimizing the D.W. affidavit, ignoring that L.H. also revised her testimony, and maximizing the other evidence.  An independent review of the evidence presented in the materials shows this case is not one of rare times the actual-innocence exception applies.  A jury—or the trial court in a bench trial—could have reasonably found Fenney guilty of first-degree sexual assault based upon the undisputed evidence that Fenney violently assaulted L.H., Fenney's own statements to investigators, the substantial medical and physical evidence including L.H.'s severe rectal injuries and the location and distribution of bodily fluids, and testimony from L.H. and D.W. that L.H. had no physical injuries—rectal or otherwise—when D.W. left.  Fenney has not met his burden of proving no reasonable juror would have voted to find him guilty beyond a reasonable doubt.  Therefore, the one-year statute of limitations applies to this petition and the Court will overrule this objection.

### C.      Fenney's Other Objections and Certificate of Appealability

Fenney also objected to two other findings in the R&R.  First, he objected to the R&R's conclusion that his petition would have been untimely even if the factual predicate

---

his brief before the Magistrate Judge, Fenney did raise actual innocence in his initial petition. (Pet. at 10.)  The Court, therefore, will assume without deciding that this exception can apply to a failure to adequately present the argument to a magistrate judge if the initial habeas petition raises actual innocence and the R&R considers the issue.  Therefore, the Court will review the claim of actual innocence de novo.

date is March 25, 2019, because the statute of limitations resumed running when the

Minnesota Supreme Court denied review on November 17, 2020, not when judgment was

entered on December 10, 2020.  Second, he objected to the R&R's conclusion that he

failed to properly exhaust his claim in state court because he did not properly present his

claim as a federal law claim to the state courts.  Because the Court finds the statute of

limitations bars Fenney's petition based upon a May 2018 factual predicate date, the

Court will overrule these objections as moot without consideration of the merits of the

objections and without adopting the R&R's findings on these issues.

Finally, the Magistrate Judge recommended denying a certificate of appealability.

The Court may grant a certificate of appealability only where a petitioner "has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

petitioner must show that "the issues are debatable among reasonable jurists, a court

could resolve the issues differently, or the issues deserve further proceedings."  *Flieger v.

Delo*, 16 F.3d 878, 883 (8th Cir. 1994); *see also Slack*, 529 U.S. at 483–84 (2000).  Here, the

Court agrees with the Magistrate Judge that there is no basis to conclude that reasonable

jurists would find the dismissal of Fenney's petition fairly debatable or would resolve the

issues differently.  Therefore, the Court will adopt the R&R's recommendation to deny a

certificate of appealability.

-17-

**CONCLUSION**

The Court will overrule Fenney's objections to the R&R and adopt the result of the

R&R because his claim is barred by the one-year statute of limitations.  Because the Court

holds that Fenney discovered the factual predicate underlying his claim no later than May

2018, the Court need not address and, thus, does not adopt the other reasons the R&R

gave for denying Fenney's petition.   The Court will dismiss Fenney's petition with

prejudice and deny a certificate of appealability.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the

Court **OVERRULES** Petitioner Justin Michael Fenney's Objections [Docket No. 15], and

**ADOPTS** the result of the Report and Recommendation of the Magistrate Judge [Docket

No. 14].  **IT IS HEREBY ORDERED** that:

1. Respondent's Motion to Dismiss [Docket No. 6] is **GRANTED**;

2. Petitioner's Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE**;
   and

3. For the purpose of appeal, the Court does **NOT** grant a certificate of
   appealability.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 11, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court